[Crim. No. 20472. First Dist., Div. Four. Dec. 30, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
PAUL RAY ANGUS, Defendant and Appellant.

974

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Deborah Long, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, William D. Stein and Stan M. Helfman, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

COLVIN, J.—Paul Ray Angus appeals from a judgment sentencing him to state prison following revocation of his preexisting probation. He contends (1) that the revocation and sentence constituted an abuse of the court's discretion and (2) that the sentence imposed improperly penalized him for demanding a revocation hearing.

Appellant was convicted, upon his guilty plea, of assault with a deadly weapon (Pen. Code, § 245, subd. (a)). On May 25, 1978, imposition of sentence was suspended and he was admitted to formal probation for five years upon several specified conditions. On May 22, 1979, upon the probation department's report and recommendation, the trial court by ex parte order revoked probation and ordered a bench warrant for appellant's arrest. Following a probation revocation hearing, on October 9, 1979, the trial court found that appellant had violated his probation and sentenced him to state prison. He filed a timely notice of appeal on November 7, 1979.

### FACTS

The essence of appellant's first contention is that the evidence did not warrant probation revocation or the prison sentence. He does not contest the admissibility of any of the documents or testimony presented to the trial court; this evidence contained a substantial number of pertinent facts.

### A. *The underlying conviction.*

Appellant had been charged in February 1978 with two counts of aggravated assault (Pen. Code, § 245, subd. (a)), by an information which also alleged that he had suffered two prior felony convictions (for robbery and for possession of marijuana).

A probation report prepared in April 1978 indicates that the charges arose out of an incident at a bar: Appellant arrived late in the evening, apparently already drunk, and demanded and consumed three drinks in quick succession. When the bartender refused to serve him more alcohol, appellant reportedly threw a glass at the bartender (count two), knifed a customer (count one), and then was dragged out of the place by his companions.

At a pretrial hearing, appellant pleaded guilty to the knifing and admitted both priors. The plea was entered pursuant to a plea bargain for dismissal of the second count, and upon the condition that appellant be admitted to probation. The second count was dismissed.

B. *Appellant's background.*

The probation report reflects that appellant was a 28 year old with a noteworthy record of criminal (8 convictions including the 2 prior felonies), juvenile (22 arrests "for such offenses as assault with a deadly weapon, battery, disturbing the peace, malicious mischief, robbery, grand theft, incorrigibility, truancy, curfew, and failure to comply with a court order," and more than 3 years on juvenile probation), and traffic (25 offenses including 3 drunk driving convictions and 2 license suspensions) troubles. He had spent time in prison and in jail, as well as on probation and on parole. He was on parole at the time of the knifing.

Appellant's performance on a previous probation, in the early 1970s, had been poor. The probation report recites among other things that he had reported only sporadically, had moved several times without informing the probation department, had actively resisted supervision, and had refused to keep appointments.

The probation report reflects that appellant was at one time a heavy drinker and that he had abused other drugs as well. The report summarizes information received from appellant's parole officer and two special police investigators, who described appellant as an "enforcer" for drug dealers who pistol-whipped and knifed adversaries, had "no conscience or qualms about hurting people," and "is a constant criminal problem within the community and chronically violent."

C. *The probation order.*

Based on the information summarized above, the reporting probation officer recommended that appellant be committed to state prison. Nevertheless, on May 25, 1978, over the prosecutor's objection that appellant was ineligible for probation absent a showing that "the interests of justice would best be served if the person is granted probation" (cf. Pen. Code, § 1203, subd. (d) [now subd. (e): Stats. 1979, chs. 1174, 1175]), the trial court admitted appellant to probation for five years on a number of terms and conditions of which the following are relevant to this appeal: "3. The defendant immediately following his

release from custody involve himself in a rehabilitation program at Delancey Street or a similar residential program which requires the commitment of two years;...

"[T]he defendant shall abide by the standard terms of probation set forth in the printed Order of Probation." The "standard terms of probation" required in pertinent part that appellant "1) Conduct himself in all respects according to the requirements of the Probation Officer of Contra Costa County and, upon termination of any period of confinement in the County Jail, continue under the charge of said Probation officer. 2) Report in person to the Probation Officer once each month or at such other times and in such manner as directed by the Probation Officer. 3) Seek and maintain employment and immediately notify the Probation Officer of any change in employment status. 4) Not change his place of residence nor leave the State of California without written permission of the Probation Officer.... 8) Maintain an address with the Probation Officer where notice of any further proceedings may be mailed."

D. *The ex parte revocation order.*

On May 22, 1979, Probation Officer McDoniels filed with the trial court a "report & recommendation for revocation of probation" which recited that appellant had served his county jail condition from May 25, 1978, until April 14, 1979, and had accumulated 10 infractions (including intoxication and threats against other inmates) during that time, and continued as follows: "The defendant held a variety of jobs at the Rehabilitation Center while incarcerated. Staff comments about the defendant were unfavorable—often in the extreme. Some deputies wondered why an inmate such as the defendant who has done so much institutional time could not do the county jail time with greater facility and ease.

"Because of the loss of Good and Work Time, law changes in time computation, and confusion over his parole hold, the defendant's release date varied from February 23, 1979, to April 22, 1979. Because of this, the defendant left the jail without being screened for his mandatory involvement in a two (2) year residential program.

"This agent's efforts to find the defendant since his jail release have been futile. Letters have been returned marked 'Moved, Unable to Forward' and 'No Such Address.' Addresses given by the defendant to the investigation officer have either been nonexistent or the persons residing there now claim to know nothing about the defendant.

"EVALUATION: It appears the defendant has no intention of complying with his Order of Probation and, indeed, is now in violation of Conditions Two, Four, Eight, and the Special Condition related to the two (2) year residential program of his Order of Probation.

"As is clear from all the documents extant in this case, this defendant is without controls and conscience. He is manipulative and a clear and present danger to the society at risk to his predations."

McDoniels recommended revocation. On the same day, the trial court filed an ex parte revocation order and directed issuance of a bench warrant.

### E. *The revocation hearing.*

At the revocation hearing, McDoniels and appellant testified, and the probation reports prepared in April 1978[1] and May 1979 and a supplemental report prepared in August 1979 were placed before the court.

The August 1979 report summarizes appellant's statement that he had moved to South Lake Tahoe where he had found employment and lived with his wife and stepson, that he did not seek a Delancey Street placement "because of the connubial responsibilities and because he claims to have lived a drug-free life for two ... years," and that he stayed in contact with his parole officer. The report recited the parole officer's statement that appellant had "disappeared" after testing positively for phenobarbital in June 1979, and the circumstances of appellant's arrest. Appellant's employment could not be verified. Appellant had applied for admission to Delancey Street at the time the report was prepared. The reporting officer, McDoniels, recommended a prison sentence.

McDoniels testified that appellant's case was assigned to him for probation supervision on June 1, 1978, and that he discussed the terms and conditions of the probation with appellant "on a number of occasions." McDoniels testified that "Mr. Angus, on a number of occasions, told me that he was not going to go to any rehabilitative program such as

---

[1]The April 1978 probation report was not formally introduced in evidence at the revocation hearing but was referred to in the text of the August 1979 report, was in the file, and was called to the trial court's attention during the revocation hearing, and was referred to by the court and counsel in subsequent proceedings as though it were in evidence.

Delancey Street, in fact, refused to sign his order of probation until January 18, 1979, some six months after he had been in custody." McDoniels explained how he and a probation resource officer had lost track of appellant's release date and acknowledged that they had not arranged for a residential program when appellant was released. In other respects, McDoniels simply amplified or reiterated matters contained in his written reports. On cross-examination, McDoniels affirmed that appellant's refusal to sign the probation order as requested was itself a violation of probation and that "[h]e finally signed his order of probation when I told him that I was tired of waiting for him and I was going to run him back into court," but that the violation did not warrant revocation proceedings. McDoniels also testified on cross-examination that Delancey Street had agreed, as of September 13, 1979, to accept appellant; McDoniels affirmed that appellant "was desirous of entering that program . . . ." McDoniels also acknowledged that it was "Probation's fault" for having failed to make arrangements for a residential program by the time appellant was released. Appellant's counsel asked whether a revelation that appellant had been reinstated on parole would change McDoniel's opinion as to revocation of probation; McDoniels said it would not. McDoniels affirmed an opinion that appellant "could not possibly benefit from a program such as Delancey Street at this time."

Appellant began his testimony by saying of the August 1979 report that "[t]here's no fairness in it. It's all lies." He said that he had reported to his parole officer and "I haven't had a drug problem" and that his "verbal deal" had been a one-year local program in the East Bay but that at disposition "they changed it on me to a two-year live-in drug program." He claimed that he had controlled his drug and alcohol problems and had stayed in contact with his wife. He blamed his delay in signing the probation order on McDoniels, stating that McDoniels had agreed to work out a shorter term alcohol rehabilitation program but "he never did." He acknowledged that "I don't want to go back to state prison." He stated the opinion that prison "wouldn't do me any good." He testified that his parole status was reinstated when it developed that the phenobarbital "was a drug I took for hayfever."

F. *Findings, order, and sentence.*

Immediately upon submission the court said: "All right.

"Mr. Angus, the Court has listened, and I have taken some notes on this.

"I do find that you violated the terms and conditions of your probation in that you violated condition number one [upon termination of confinement in county jail, continue under charge of his probation officer], two [report regularly to probation department], three [report changes in employment status], four [not move or leave the state without permission of the probation officer] and you have also very clearly violated the provision which reads that upon release from custody, that he involve himself in a rehabilitation program at Delancey Street or in a similar residential program which requires a commitment of two years.

"Gentlemen, the Court does intend to proceed with sentencing.

"[Counsel stated that they had no objection.]

"THE COURT: All right. Mr. Angus, the Court is not going to follow the report and recommendation of Probation that was done over a year ago recommending five years.

"But I am going to sentence you to the Department of Corrections for the mid term of a violation of 245a, which is three years.

"I am also going to sentence you on one prior."

G. *Further proceedings.*

On the same day, the proceedings were reopened to permit defense counsel to assert that the trial judge had offered, before the hearing, to fix appellant's prison term at three years if he would not contest the revocation, and that by sentencing appellant to a total of four years after the contested hearing the judge was impermissibly punishing appellant for insisting on a hearing.

The record on appeal does not contain prehearing negotiations. At the outset of the reopened proceedings, the court recited that it had not received the April 1978 probation report until after the revocation hearing had begun, and pointed out that appellant had admitted two prior separate prison terms for felonies and that the court had used only one of the two to enhance appellant's sentence. Defense counsel represented that there had been a discussion in chambers at which "the Court had indicated to me that if I went to Mr. Angus and told him that if he would waive a hearing and admit a violation, this Court would sentence

him to three years state prison." The court replied: "In effect, counsel, the Court made for you a disposition agreement for your client." Counsel stated that it was improper for the court "to punish a man for having the audacity to ask for a hearing." The court stated that it had acquired additional information from the 1978 probation report, after the discussion in chambers, and that "Mr. Angus has not been punished for having a hearing. Mr. Angus was sentenced by this Court pursuant to the information before it following and during the time of the hearing."

ANALYSIS

A. *Abuse of discretion.*

■ Appellant concedes that there was sufficient evidence to find that appellant had violated the conditions of his probation, but nevertheless contends that by sending him to prison the trial court abused its discretion.

Appellant's counsel contends that because appellant testified that he maintained contact with his parole officer after his release from jail, his failure to maintain contact with his probation officer was simply the result of a misunderstanding on appellant's part.

However, it was the probation officer, not the parole officer, who was to place appellant in a two-year residential rehabilitation program. In view of appellant's express refusal prior to release from jail to participate in such a program, his failure to contact the probation department upon and after his release, the trial court could reasonably conclude that this was appellant's method of avoiding the residential program.

The trial court was not obligated to believe appellant's testimony at the revocation hearing that he did not think he was required to report to the probation department. This is particularly so in view of appellant's history of failures to report while on probation granted in other cases, and in view of the evidence that he also failed to report to his parole officer.

Appellant's counsel contends that it was the probation department's fault, not appellant's, that he did not enter a residential rehabilitation program upon his release from jail. This is so, according to appellant, because the probation department had not set up such program for ap-

pellant at the time of his release from jail. This contention ignores the evidence.

The probation officer testified that the most efficient use of resources mandated beginning arrangements for residential programs for inmates just prior to their release. Due to intervening changes in the law regarding computation of Penal Code section 4019 credits and appellant's concurrent status as a parolee, the probation department attempted to keep track of appellant's widely varying release dates. Nevertheless, the probation department was informed in April 1979, that appellant had already been released from the jail. After his release, appellant did not contact the probation department, and attempts by the department to locate him via addresses he had previously provided proved futile. As a result, appellant could not be put through the screening and application process for placement in a residential program: "He had never been screened or interviewed or talked to by anybody [about application for the residential program]. I mean, he just got out of jail and disappeared.

" . . . . . . . . . . . . . . .

"MR. TUCEVICH: Q. My question is at the time he was supposed to be screened, accepted to the thing, he was in custody, he was in jail, he couldn't exactly leave and absent himself from the jail and go make application; could he?

"A. No. We were going to set him up for a program upon release, which, as I indicated previously, varied considerably, and he just was released prior to our getting it set up."

" . . . . . . . . . . . . . .

"He just disappeared. He never—I never got a chance to get him set up in a program . . . . "

In view of appellant's refusals, prior to his release, to participate in any residential rehabilitation program and his failure to contact the department upon and after his release, appellant's failure to participate in a residential rehabilitation program can hardly be laid at the feet of the probation department.

The primary thrust of appellant's argument appears to be that prison was too stern a sanction for failing to stay in touch with his probation officer.

### 1. *Nature of probation.*

■ As a predicate for other elements of his argument appellant contends that a grant of probation is not an act of grace but rather a sentencing alternative appropriate to the severity of a particular crime and that once the defendant has done the time and/or paid the fine called for in the order of probation, he or she has been punished for the crime. Appellant derives the second generalization from the first, and for the first relies upon a Supreme Court decision (*People* v. *Vickers* (1972) 8 Cal.3d 451, 458 [105 Cal.Rptr. 305, 503 P.2d 1313]), which considered the degree of procedural protection to which a probationer would be entitled on revocation of his probation, and a subsequent Supreme Court decision (*People* v. *Edwards* (1976) 18 Cal.3d 796, 801 [135 Cal.Rptr. 411, 557 P.2d 995]), which cited *Vickers*, essentially in passing, in the course of analyzing a contention that a trial judge must state reasons for denying probation. Appellant's generalizations seem at best inaccurate: As decisions dealing with matters of procedure, neither *Vickers* nor *Edwards* alters the fundamental California view that probation provides a means by which the trial court may retain jurisdiction over the defendant for the primary purpose of rehabilitation. (2 Witkin, Cal. Crimes (1963) Punishment for Crime, § 1048, p. 992; see also, e.g., *People* v. *Edwards, supra,* 18 Cal.3d 796, 802; *People* v. *McDowell* (1976) 59 Cal.App.3d 807, 812-813 [130 Cal.Rptr. 839]; *People* v. *Atwood* (1963) 221 Cal.App.2d 216, 222 [34 Cal.Rptr. 361]; *People* v. *Carter* (1965) 233 Cal.App.2d 260, 266 [43 Cal.Rptr. 440]; *In re Coughlin* (1976) 16 Cal.3d 52, 59-60 [127 Cal.Rptr. 337, 545 P.2d 249].)

### 2. *Revocation.*

■ Appellant advances the truistic premise that a revocation order must be based in part upon a determination that revocation will be in the interests of justice, and then builds upon this premise an innovative argument to the effect that the trial court must expressly find that revocation will be in the interests of justice and that the absence of such an express finding will authorize the reviewing court to conclude that the trial court has failed to exercise, or has otherwise abused, its discretion.

Appellant's premise arises directly out of the statute authorizing revocation, which provides that "the court may revoke and terminate ... probation *if the interests of justice so require* and the court, in its judgment, has reason to believe from the report of the probation officer or otherwise that the person has violated any of the conditions of his probation, has become abandoned to improper associates or a vicious life, or has subsequently committed other offenses, regardless whether he has been prosecuted for such offenses." (Pen. Code, § 1203.2, subd. (a); italics added.)

But appellant's conclusions are not compelled by his premise.

### a. *Must the trial court make a finding?*

The statute does not require that the trial court expressly find that "the interests of justice ... require" revocation. Appellant cites no case for such a rule and none has been found. Judicial enunciation of such a rule would presumably be the function of the Supreme Court "in the exercise of [its] supervisory authority over state criminal procedure." (*People* v. *Edwards, supra*, 18 Cal.3d 796, 799.) But in any event such a rule would seem superfluous. An admonition to a court to act in accordance with "the interests of justice" would appear to be no more than a direction to the court to do its judicial duty. In the context of section 1203.2, the admonition appears simply to invoke the sound discretion of the trial court. Thus it is said in general terms, and without talismanic reference to "the interests of justice," that upon proof of a probation violation "the court must go on to decide whether under all the circumstances this violation of probation warrants revocation." (*People* v. *Coleman* (1975) 13 Cal.3d 867, 895, fn. 22 [120 Cal.Rptr. 384, 533 P.2d 1024].) And in a rare case in which there was proof of technical but de minimis violations of the conditions of probation Division One of this district reversed the revocation not in terms of "the interests of justice" but rather on grounds of abuse of discretion. (*People* v. *Buford* (1974) 42 Cal.App.3d 975, 986, 987 [117 Cal.Rptr. 333].) If in fact a court purporting to act under section 1203.2 has disregarded "the interests of justice," no recitation to the effect that the interests of justice require the revocation will save the order. No more should the absence of such a recitation impeach an order which otherwise adequately appears to be a product of sound discretion.

The real issue is whether the trial court exercised sound discretion in this action.

### b. *Did the trial court exercise its discretion?*

■ Many cases support the conclusion that "'revocation rests entirely in the sound discretion of the trial court.'" (*People* v. *Smith* (1970) 12 Cal.App.3d 621, 626 [90 Cal.Rptr. 811], quoting from *People* v. *Taylor* (1968) 260 Cal.App.2d 393, 395 [67 Cal.Rptr. 180].) It is axiomatic that when an issue entrusted to the trial court's discretion is properly presented to the court for decision, the court must *exercise* its discretion: In such a case a statement or other evidence that the court believes it has no discretion, but must rule in a certain way, indicates an error so fundamental as to be said to amount to a refusal to exercise jurisdiction. (1 Witkin, Cal. Procedure (2d ed. 1970) Jurisdiction, § 244, p. 785.) Appellant's position in this action might be construed to imply an argument that the trial court, having found probation violation on the basis of substantial evidence, deemed itself legally obliged to revoke probation without considering "whether under all the circumstances this violation of probation warrants revocation." (*People* v. *Coleman, supra,* 13 Cal.3d 867, 895, fn. 22.) Appellant appears to suggest that the absence of an express finding that "the interests of justice . . . require" a revocation implies a failure to exercise discretion.

It is true that the trial court moved immediately from a finding of violations to a statement of intent to "proceed with sentencing." But the court nowhere stated, directly or by necessary implication, that it had no discretion, and viewed as a whole the record does not support a conclusion that the court believed it did not have, or in any event did not exercise, discretion as to whether to revoke probation. There is a "normal presumption that the trial court properly followed established law." (*Ross* v. *Superior Court* (1977) 19 Cal.3d 899, 915 [141 Cal.Rptr. 133, 569 P.2d 727].) Were this a close case on the question of revocation, the apparent speed and patent economy of expression with which the trial court decided to revoke probation might support an inference that the court believed it had no other choice. But here, when everything known to the trial court is considered, the decision to revoke is in no sense inconsistent with exercise of discretion. It is not sufficiently shown that the trial court failed to exercise discretion.

### ■ c. *Did the trial court abuse its discretion?*

Again, many cases support the generalization that "'[w]hile the discretion of the trial court to revoke probation is said to be "very broad," the court may not act arbitrarily or capriciously. Its determination must

be based on the facts before it.'" (*People* v. *Smith* (1970) 12 Cal. App.3d 621, 626 [90 Cal.Rptr. 811], quoting from *People* v. *Taylor* (1968) 260 Cal.App.2d 393, 395 [67 Cal.Rptr. 180], and referring to "numerous cases"; see also, e.g., *In re Coughlin* (1976) 16 Cal.3d 52, 56 [127 Cal.Rptr. 337, 545 P.2d 249]; *People* v. *Surplice* (1962) 203 Cal. App.2d 784, 791 [21 Cal.Rptr. 826].) A trial court's discretionary act is accorded great weight on appeal: It "will not be disturbed unless it is abused, i.e., the appellate court will not substitute its own view as to the proper decision." (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 242, p. 4234.) To warrant reversal the record must suggest "'a manifest miscarriage of justice.'" (*Ibid.*)

Without belaboring the detailed summary of the record set out above, it seems clear that a decision to revoke appellant's probation was well within the ambit of the trial court's sound discretion in this action. A few of the highlights:

Appellant had long experience with custody, parole, and probation. There is little chance the violations were inadvertent.

Appellant had a long history of resisting probation and parole supervision, which reinforces the conclusion that he knew or should have known he was violating probation and which supports an additional conclusion that reinstatement of probation, with or without modification, would be a waste of time.

According to McDoniels, appellant repeatedly said with specific reference to his probation that he did not intend to comply with the requirement that he enter a residential treatment program.

Appellant's longstanding pattern of violent antisocial conduct suggested that society's interest required that he be controlled: Since he quite clearly was not amenable to probation controls, it was appropriate that stricter physical controls be substituted.

3. *Sentence.*

Building upon his hypothesis that the initial probation order was a punishment judicially matched to the perceived gravity of his crime, and that, therefore, he had already been punished for the underlying crime, appellant contends that revocation was improper "unless

the sentence imposed was appropriate as a punishment for the acts which constituted the probation violation."

Appellant cites no authority for this proposition, and there appears to be none. Upon revocation of probation the trial court was empowered to "pronounce judgment for any time within the longest period for which the person might have been sentenced" where, as here, imposition of sentence had been initially suspended. (Pen. Code, § 1203.2, subd. (c).) The court could not, in these circumstances, consider "the acts which constituted the probation violation": "The length of the sentence shall be based on circumstances existing at the time probation was granted, and subsequent events may not be considered in selecting the base term nor in deciding whether to strike or specifically not order the additional punishment for enhancements charged and found." (Cal. Rules of Court, rule 435(b)(1).) The cases agree that "[w]hen imposition of sentence has been suspended, and the defendant placed on probation, the termination of probation requires that the court impose sentence on the original offense." (*People* v. *Billetts* (1979) 89 Cal.App.3d 302, 309 [152 Cal.Rptr. 402], citing earlier cases.) This rule is wholly consistent with the purposes of probation. Punishment for new offenses should properly be assigned in new proceedings; appellant's proposed innovation would essentially nullify the concept of probation revocation and thus necessarily would vitiate the probationary nature of probation itself.

B. *Penalty for requesting hearing.*

■ Appellant contends that in light of the trial judge's prehearing proposal of a three-year prison sentence if appellant did not contest the revocation, the four-year sentence imposed after appellant *did* contest "improperly penalized appellant for exercising his constitutional right to a probation revocation hearing." Appellant relies on *In re Lewallen* (1979) 23 Cal.3d 274 [152 Cal.Rptr. 528, 590 P.2d 383], and *North Carolina* v. *Pearce* (1969) 395 U.S. 711 [23 L.Ed.2d 656, 89 S.Ct. 2072, 2089].

Both *Lewallen* and *Pearce* make clear that a sentencing court may not increase a defendant's sentence to punish him for having asserted constitutional or statutory procedural rights. Neither case imposes an absolute ban on imposition of a sentence higher than that which might have been proposed before the defendant asserted his constitutional or statutory right: There must be some showing, properly before the appel-

late court, that the higher sentence was imposed as punishment for exercise of the right. In *Lewallen* the Supreme Court said: "Thus it is clear that under appropriate circumstances a defendant may receive a more severe sentence following trial than he would have received had he pleaded guilty; the trial itself may reveal more adverse information about him than was previously known. A court may not, however, impose a sentence that conflicts with a defendant's exercise of his constitutional right to a jury trial. [Citation.] The comments of the judge reveal that is what occurred here." (*In re Lewallen, supra*, 23 Cal.3d 274, 281.)

In this action there is no indication that the court set out to penalize appellant for asking for a hearing, beyond the naked fact that the trial judge apparently did offer three years before the hearing and impose four years afterward. The trial judge tendered an explanation for the difference and denied any intent to punish appellant for exercising his constitutional right. (*People* v. *Vickers, supra*, 8 Cal.3d 451, 458.)

Appellant contends that the information in the April 1978 probation report was available to the trial court throughout the pendency of the revocation proceedings and that the court must be *deemed* to have been aware of it. We approve and adopt the People's response: "Appellant provides no authority for this odd proposition. We see no impropriety in the court familiarizing itself with the post-probation violation reports before determining revocation of probation, and then considering the original probation report prior to imposing sentence on the original offense. Since appellant rejected the original dispositional offer, he was not deprived of any bargained-for consideration; any defendant who chooses to proceed with a hearing takes the chance that the court will become apprised of information warranting a stiffer sentence than that discussed in prehearing negotiations. Here, the probation report, filed April 24, 1978, was offered in evidence and read by the court after appellant rejected the offer. That report recommended a five-year prison term, and backed up the recommendation with details of appellant's violation of Penal Code section 245, subdivision (a)—stabbing an innocent victim in the back with a knife—plus appellant's long and violent criminal involvement. We see no impropriety in the court's revocation of probation on the basis of appellant's conduct while on probation, and imposition of punishment on the original offense on the basis of information relating appellant's conduct during and prior to the original offense. The record does not support the contention that appellant was

given a four-year sentence for the purpose of punishing him for exercising his right to a revocation hearing."

We conclude that a violation of *Lewallen* has not been shown.

The judgment imposing sentence is affirmed.

Rattigan, Acting P. J., and Christian, J., concurred.