[Crim. No. 6742. Fifth Dist. Mar. 27, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
EUGENE NEWTON GRIFFITH, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Harvey Zall and Eric J. Coffill, Deputy State Public Defenders, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Maureen Daly, Joel Carey and Jana L. Tuton, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

ANDREEN, J.—If a court suspends the imposition of sentence and admits a defendant to probation[1] and the defendant subsequently comes before the

---

[1]Although the record is not perfectly clear, it appears that the trial court employed the device of suspending the imposition of sentence, rather than imposing a sentence of imprisonment and then suspending it. The defendant pleaded guilty, so it was unnecessary for the trial court to make factual findings as to circumstances which would justify imposition of the upper or lower term if probation were to be revoked later. (*People* v. *McKinzie* (1982) 134 Cal.App.3d 1016, 1019 [184 Cal.Rptr. 884]; Cal. Rules of Court, rule 433(b).)

court on a revocation of probation, may the court when selecting the prison term consider a crime which was committed after the instant offense but which was unknown to the sentencing court at the time the defendant was admitted to probation?

## I. FACTS

Defendant pleaded guilty to a violation of Penal Code[2] section 211. He was placed on probation on April 19, 1982. Unbeknownst to the authorities, three days prior to the sentencing hearing defendant had committed the crime of burglary. When this was discovered, probation was revoked, based upon the fact that the defendant practiced a deception on the court when he allowed his attorney to state at the sentencing hearing "I have noticed a complete change in his personality over the last month. Mr. Griffith has finally gotten back together." In the report of the probation officer, filed prior to the April 16 burglary, the probation officer stated "He expressed his remorse for committing the offense and strongly urged the Court to consider granting him probation so that he might pay restitution to the victim. The defendant further stated, 'This is the last time, I want to go straight.'"

As noted in *In re Bine* (1957) 47 Cal.2d 814, 817 [306 P.2d 445], probation is an act of clemency which may be withdrawn if the privilege is abused. Such an abuse occurs when a defendant practices deception upon the court at the time probation is granted. (Also see *In re Williams* (1972) 28 Cal.App.3d 53, 55 [104 Cal.Rptr. 528].)

Although defendant was fully protected from disclosing his April 16 burglary by his Fifth Amendment privileges, he had no right to deceive the court by stating through his counsel that he was a changed personality who had "finally gotten back together."

At the sentencing hearing, defendant's counsel argued that the court could not consider the April 16, 1982, burglary in making its sentencing choices as to the robbery for which defendant was before the court. In its discussion of factors in mitigation and aggravation relevant to sentencing on the robbery, the court recited the various convictions in defendant's criminal record, and then stated: "Then [the defendant] comes in and he has this later burglary that I heard, and he is always showing remorse after he's caught, but I don't think that he is very remorseful; in fact, I think he's an accomplished burglar, and I will agree on one circumstance in mitigation, that he acknowledged guilt at an early stage of the criminal proceedings. I

---

[2]All further statutory references are to the Penal Code unless otherwise indicated.

do not agree that he is remorseful. I think he puts on an act of remorse, but he goes right out and commits another burglary, so that doesn't indicate remorse to me.

"·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·

"As to aggravation, the crime involved multiple victims: two employees and patrons; and two, I find that it was committed, a lot of premeditation [*sic*], in fact a tremendous amount of planning. They wore ski masks and a stocking and they armed themselves.

"The defendant had a deadly weapon. He had that knife. That's Number 3 in aggravation, although that was dropped at the time.

"His convictions are certainly of increasing seriousness. He was on felony probation in one case and on some probation in another case at the time he committed the crime, and he had a misdemeanor matter pending before the courts at the time he committed this robbery. In fact, as they find on Page 13,[3] he has just consistently involved himself in the theft of property from others since June.

"Therefore, it will be the judgment of this Court that his application for probation is denied, and he is sentenced to the Department of Corrections for a period of five years. I think it is very, very aggravated."

II. ■■■ DID THE TRIAL COURT RELY UPON CONDUCT SUBSEQUENT TO THE GRANTING OF PROBATION IN IMPOSING THE UPPER TERM?

California Rules of Court, rule 435(b)(1)[4] provides, in part, that when the trial court determines, following revocation of probation, that the defendant should be committed to prison, "[t]he length of the sentence shall be based on circumstances *existing at the time probation was granted,* and subsequent events may not be considered in selecting the base term . . . ." (Italics added.)

Defendant contends that the trial court violated this rule by considering the fact of the April 16, 1982, burglary in imposing the upper term, citing *People* v. *Colley* (1980) 113 Cal.App.3d 870 [170 Cal.Rptr. 339].[5] In that

---

[3]The probation officer's report to which the trial court referred was filed *before* the April 16, 1982, burglary, and so did not include that crime in its analysis.

[4]Hereinafter rule or rules.

[5]Defendant also cites *People* v. *Angus* (1980) 114 Cal.App.3d 973 [171 Cal.Rptr. 5], but that case merely reiterates the principle of rule 435(b)(1) under factual circumstances inapposite to the present appeal.

case, the defendant, convicted of burglary, was placed on probation; several months later, he was found in violation of probation and sentenced to the middle term of three years in state prison, but was subsequently placed on probation again pursuant to the "recall" provision of section 1170, subdivision (d). (*Id.*, at pp. 871-872.) Finally, the defendant was found in violation of probation a second time, and sentenced to the upper term for the burglary. (*Id.*, at p. 872.) The sentencing court justified selection of the upper term in part as follows: " 'The court will fix as the base term the upper term for the reasons stated that [the defendant] has rejected the leniency of the court, he has an extensive criminal background and record. The court's tried every possible rehabilitative tool available to it and they have all failed. Perhaps long term custody will succeed where leniency and efforts of the court at rehabilitation have failed.' " (*Ibid.*)

On appeal, the appellate panel modified the sentence so that the middle term was imposed as the base term, reasoning that since the trial court had selected the middle term at the defendant's first revocation of probation (which term had been "recalled"), it must have found at that time that the defendant's criminal record did not justify imposition of the upper term. (*Id.*, at pp. 873-874.) Consequently, it was "readily apparent that the [trial] court's selection of the upper term the second time it sentenced [the defendant] was based upon its consideration of his subsequent conduct" in violation of rule 435(b)(1). (*Id.*, at p. 873.)

There is a superficial similarity between the circumstances of *Colley* and the present appeal, in that both trial judges exercised leniency in their initial treatment of the convicted defendant apparently in hopes that the defendant would commit no further criminal acts. The parallel immediately breaks down upon closer analysis, however. In *Colley,* the revocation of probation was premised upon acts occurring *after* the grant of probation, while in the present case defendant's probation was revoked because he had practiced a deception on the sentencing court based upon conduct occurring *prior* to the grant of probation. (See *In re Williams, supra,* 28 Cal.App.3d 53, 55; *People* v. *Sapienzo* (1923) 60 Cal.App. 626, 629 [213 P. 274].) ■ ■■

■ In *Colley,* the trial court had previously imposed the middle term and then suspended execution of sentence, impliedly finding that the single circumstance in aggravation was not enough to justify imposition of the upper term, while in the present case, the trial court suspended imposition of sentence,[6] then, upon revocation, set forth the numerous factors in aggravation as counterbalanced by a single factor in mitigation. (See Facts,

---

[6]The procedure to be followed for sentencing upon revocation of probation varies depending upon whether it was the imposition or execution of the sentence which was previously suspended. (See rule 435.)

above.) ■ ■■■ The only reference to the event causing revocation of probation appears in the trial court's discussion of factors in mitigation, in which it rejected defendant's "remorse" because he had committed another crime three days before the original sentencing in which such remorse had been advocated as a mitigating factor by the defense.[7]

In the present appeal, the defendant could justifiably expect that, on resentencing following revocation of probation, he would essentially be placed before the court in the same posture as at the original sentencing hearing at which probation was granted, *absent the deception that he had "gone straight" since committing the robbery* for which he was being sentenced. This is exactly what occurred. ■ If the trial court had known of the April 16, 1982, burglary at the original sentencing hearing on April 19, 1982, defendant's expressions of remorse and promises to lead a crime-free life would have been immediately perceived by the trial court as a fraud, and the balance of several aggravating factors against a single mitigating factor would easily have justified selection of the upper term for the robbery. Defendant should not be heard to complain now because his fraud upon the court was not discovered until after the original sentencing hearing—the trial court's interpretation of defendant's *pre*probation conduct as evidence of lack of remorse violated neither the express terms nor the policy of rule 435(b)(1).

### III. Did the Trial Court Abuse Its Discretion in Selecting the Upper Term?

Defendant's contention that the trial court acted arbitrarily and capriciously in abuse of its discretion appears based upon the fact that, prior to the postrevocation sentencing hearing, the probation officer and the prosecution had recommended that defendant be sentenced to state prison for the middle term.

Defendant has not suggested that the trial court is bound by the recommendations of the prosecution or of the probation officer. Section 1203.2, subdivision (c) provides, in part, "Upon any revocation and termination of probation the court may, if the sentence has been suspended, *pronounce judgment for any time within the longest period for which the person might have been sentenced.*" (Italics added.) The trial court did not act arbitrarily

---

[7]We note that remorse is not a factor in mitigation listed in rule 423 nor is it an element of any of the factors listed therein, with the possible exception of subdivision (b)(3)—"The defendant voluntarily acknowledged wrongdoing prior to arrest or at an early stage of the criminal process"—which was expressly found as a mitigating factor by the trial court. However, the enunciated factors are not exclusive. (*People* v. *Covino* (1980) 100 Cal.App.3d 660, 670-671 [161 Cal.Rptr. 155].)

in determining that the several aggravating factors outweighed the single mitigating factor.

## CONCLUSION

The judgment is affirmed.

Franson, Acting P. J., and Woolpert, J., concurred.