Filed 7/12/13  P. v. Hall CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B237656 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA381111) |
| v. | |
| JIBRIL KHALID HALL et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ronald S. Coen, Judge.  Affirmed.

Jeffrey S. Kross, under appointment by the Court of Appeal, for Defendant and Appellant Jibril Khalid Hall.

Randall Connor, under appointment by the Court of Appeal, for Defendant and Appellant Melvin Henry, Jr.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Yun K. Lee and Tasha G. Timbadia, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant Jibril Khalid Hall was convicted of four counts of robbery, with a true finding that he personally used a firearm on count 1. (Pen. Code, §§ 211, 12022.53, subd. (b), 12022, subd. (a)(1).)[1] Appellant Melvin Henry, Jr., was convicted of one count of robbery (§ 211), with a true finding that a principal was armed with a firearm (§ 12022, subd. (a)(1)). Appellants Hall and Henry contend the trial court penalized them for exercising their right to a jury trial by improperly imposing the upper term for their burglary convictions, and Hall contends the trial court improperly relied on an inaccurate probation report in imposing the upper term. We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On October 17, 2011, Hall and Henry were charged in an amended information as follows: count 1, second degree robbery against Hall and Henry (§ 211); count 2, second degree robbery against Hall (§ 211); count 3, second degree robbery against Hall (§ 211); count 4, attempted second degree robbery against Hall (§§ 664, 211); and count 5, second degree robbery against Hall (§ 211). The information alleged as to counts 1 and 5 that Hall personally used a handgun (§ 12022.53, subd. (b)) and as to counts 1, 2, 3, and 5 that a principal was armed during the commission of the offense (§ 12022, subd. (a)(1)).

### Count 1

On January 28, 2011, at about 6:30 p.m., Hector Casillas took his children to McDonald's at Western and Century. The area was not well lit and there were not many people around. His two daughters and son, ages 13, seven and five, respectively, were with him. When they came out of the restaurant, he saw three African-American men at a bus stop. They surrounded them, but then left. Casillas and his family continued down the street, and when he turned around, he saw the three African Americans following him. One of the men approached him with a gun and put it in Casillas's chest. Casillas did not understand what the man said because Casillas did not speak English, but he gave the man with the gun his wallet. The man took the money out of the wallet, threw it on the

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

ground, and ran off. One of the remaining men picked up the wallet and gave it to Casillas.

The man with the gun was wearing a black sweatshirt with a cap and black jeans. At trial, Casillas identified Hall as the man with the gun, and Henry as the man who picked up his wallet and gave it back to him. Although the area was not well lit, Casillas got a good look at the men's faces. He described them as three male African Americans, two of whom were wearing black pants, black hoodies and white shoes; the other man was wearing blue jeans and white shoes.

Casillas's minor daughter V.C. testified that when they left the McDonald's, Casillas told her to hurry up. Three men came up to them and pointed the gun at Casillas and asked for money. Casillas opened his wallet and gave it to the man with the gun. V.C. was very scared. V.C. could not identify the man with the gun in court, but identified Henry in court. She had seen Henry in the court hallway before testifying and recognized him. V.C. wears glasses and cannot see at a distance well.

### Counts 2 and 3

On February 5, 2011, at about 11:00 a.m., Asod Andrus was at 106th Street and Western Avenue with his girlfriend Brittany Reado waiting for the bus. Two black men walked up and said, "'Don't do anything stupid.'" One man took Reado's purse, and the other man took Andrus's cell phone, and his jewelry, but did not take Andrus's wallet. Andrus identified Hall from a photo array as the person who had taken his property. Reado told police that one of the men was wearing a black shirt with a green plant on it, and the other was wearing a red jacket. The man with the jacket, who was the one who took Reado's purse, appeared to be carrying a gun underneath his jacket.

### Count 4

On February 10, 2011 at 4:20 p.m., Jessilyn McCrury was riding the 757 bus and was sitting near the middle of the bus. A man from the back of the bus pulled on her clothes and tried to pull a chain off her neck. The man was unsuccessful because the chain was too small and McCrury was yelling. She was unable to identify defendant for

3

police. On February 10, 2011 at about 4:20 p.m., Yaritza Benigno was riding the 757 bus and witnessed the incident. She described the attacker as African American, wearing a baseball cap and a gray sweatshirt. He had run off after the attack. Benigno identified Hall at a field showup.

On February 10, 2011, police were conducting surveillance near the intersection of Western and Century. Three police cars were monitoring fixed posts. Police were focusing on buses because a lot of robberies had occurred in the area at bus stops or as passengers got off the bus. Police observed a male African American get off the 757 bus and run westbound on Century. The man looked over his shoulder to see if anyone was following him. Police detained the man, and Hall was identified in court as the man who ran off the bus. Jessilyn McCrury also identified Hall at a field show up.

### Count 5

Pablo Aragon, a day laborer, was dropped off at a Home Depot on Century Boulevard and Crenshaw on November 28, 2010 about 4:00 p.m. Aragon had just finished working for the day, and was waiting for a bus with his friend Antonio. After the bus did not come, they began walking home. They passed an apartment building at Van Ness. Three black men asked them for a dollar. Antonio said no, and they kept walking. As they approached Western, a woman grabbed Antonio and a man came up to Aragon and pointed a revolver at Aragon. The man and woman pushed Aragon and Antonio towards an alley. Aragon gave the man $40, but the man reached into Aragon's pocket and took out $200 and Aragon's cell phone. The man was wearing a grey hooded sweatshirt and gray pants.

Police showed Aragon a six-pack photo array. When he first testified at trial, he was not sure if the man he identified in the photo array was the one with the gun who took his money. Later, he was recalled to the witness stand and testified that Hall was the person who took his money and cell phone.

4

**Defense**

Police prepared four photo arrays containing six photographs each. Two of the arrays did not contain Hall or Henry; of the remaining two, one contained Hall and the other contained Henry. Police officer Miguel Gutierrez showed Casillas photo arrays on February 10, 2011. He believed he may have shown him all four photo arrays.

The jury convicted Hall on counts 1, 2, 3 and 4, but found the firearm allegation true only for count 1. The jury acquitted Hall on count 5. The jury convicted Henry on count 1, and found the firearm allegations true.

The trial court sentenced Hall to an aggregate term of 17 years, eight months, consisting of the high term of five years, plus 10 years for the personal firearm use allegation, plus two additional one-year consecutive terms on counts 2 and 3, plus an additional eight months on count 4. The trial court sentenced Henry to an aggregate term of six years, consisting of the high term of five years on count 1, plus one year for the firearm allegation.

## DISCUSSION

## I. The Trial Court Did Not Punish Henry with a Higher Sentence for Exercising His Right to a Jury Trial

Henry argues the trial court penalized him for exercising his right to a jury trial by imposing the upper term. He points to the fact that the trial court had his probation report before it when it offered probation, but after trial, relied on those matters in Henry's probation report—prior convictions and his recent completion of probation—rather than evidence adduced at trial or posttrial in sentencing Henry to the upper term. Respondent contends Henry forfeited the argument by failing to raise it in the trial court; further, there was no evidence the trial court punished him for going to trial, and court's selection of the upper term was supported by Henry's prior convictions.

### A. Factual Background

The probation officer's report disclosed that Henry had three juvenile petitions sustained (knife on school grounds, transportation and sale of marijuana, and forgery) for

5

which he received probation.  Henry also had one adult misdemeanor conviction for carrying a loaded firearm and concealed firearm in 2007 for which he was given 36 months probation and 90 days in jail.[2]  Henry was a member of the Hard Time Hustlers gang.  In the present case, the probation report noted that the victim was not injured and Henry did not have a firearm in his possession, otherwise a more punitive sentence would have been recommended.  The probation officer recommended that the court impose but suspend execution of a prison sentence, with Henry placed on probation on condition that he serve 180 days in county jail if he failed to perform 180 hours of community service through the probation department's probation adult alternative work service (PAAWS) program.  The report found no factors in mitigation, but noted that Henry's prior convictions were numerous or of increasing seriousness.

On October 19, 2011, the day before jury selection, the trial court read the probation report.  At his sentencing hearing on November 29, 2011, Henry pointed out to the court that the court had previously offered probation after the testimony of the first witness, but Henry had turned down the offer.  Henry requested the court to stay his conviction and place him on probation, noting that he was the lookout and gave the victim his wallet back, asserting that his involvement was minimal.  The prosecution requested the high term based upon Henry's convictions for carrying a concealed weapon and a loaded firearm.  The court stated that it did not find Henry suitable for probation based on his prior adult and juvenile convictions.  The court noted that Henry's probation had ended just five and a half months before the charged crime, and observed that "[w]ith the extensive record that [Henry] has, the high term is warranted."  Henry requested a reconsideration of his sentence based on his minimal participation in the crime.  The court denied the request, stating, "I listened to the entire record [of trial], not just the conduct."

---

[2] Henry's probation would have ended in July 2010, about six months before the January 2011 robbery of Casillas and his family.

6

### B. Discussion

A defendant may not be penalized for exercising his or her jury trial right, which is a violation of Fourteenth Amendment due process rights. (*In re Lewallen* (1979) 23 Cal.3d 274, 278; *People v. Collins* (2001) 26 Cal.4th 297, 306–307.) "[O]nly the most compelling reasons can justify any interference, however slight, with an accused's prerogative to *personally* decide whether to stand trial or to waive his rights by pleading guilty." (*People v. Hill* (1974) 12 Cal.3d 731, 768.) "'[A] court may not offer any inducement in return for a plea of guilty or nolo contendere. It may not treat a defendant more leniently because he foregoes his right to trial or more harshly because he exercises that right.'" (*People v. Clancey* (2013) 56 Cal.4th 562, 575, quoting *People v. Superior Court* (*Felmann*) (1976) 59 Cal.App.3d 270, 276.) Henry's failure to raise the issue in the trial court does not result in a forfeiture. (*People v. French* (2008) 43 Cal.4th 36, 46–47.)

Although a court may not impose a harsher sentence on a defendant as punishment for exercising his or her jury trial right, "[t]here must be some showing, properly before the appellate court, that the higher sentence was imposed as punishment for exercise of the right." (*People v. Angus* (1980) 114 Cal.App.3d 973, 989–990.) In *In re Lewallen*, *supra*, 23 Cal.3d at page 274, the defendant refused to accept a negotiated sentence. Following a jury trial, at sentencing, the defense attorney requested informal rather than formal probation. (*Id*. at p. 276.) The trial court responded: "'I think I want to emphasize there's no reason in having the District Attorney attempt to negotiate matters if after the defendant refuses a negotiation he gets the same sentence as if he had accepted the negotiation. It is just a waste of everybody's time, and what's he got to lose. And as far as I'm concerned, if a defendant wants a jury trial and he's convicted, he's not going to be penalized with that, but on the other hand he's not going to have the consideration he would have had if there was a plea.'" (*Id.* at p. 277.) The court remanded the matter for resentencing, finding that the defendant had shown "that the trial court's exercise of

7

its sentencing function was improperly influenced by his refusal of the proffered plea bargain and insistence on his right to trial." (*Ibid.*)

*Lewallen* emphasized "that a trial court's discretion in imposing sentence is in no way limited by the terms of any negotiated pleas or sentences offered the defendant by the prosecution. The imposition of sentence within the legislatively prescribed limits is exclusively a judicial function." (*In re Lewallen*, *supra*, 23 Cal.3d at p. 281.) "Legitimate facts may come to the court's attention either through the personal observations of the judge during trial [citation], or through the presentence report by the probation department, to induce the court to impose a sentence in excess of any recommended by the prosecution." (*Ibid.*, fn. omitted.) "The mere fact . . . that following trial defendant received a more severe sentence than he was offered during plea negotiations does not in itself support the inference that he was penalized for exercising his constitutional rights." (*People v. Szeto* (1981) 29 Cal.3d 20, 35.)

Here, Henry asserts that we must infer the trial court penalized him for asserting his jury trial right because the court read the probation report before trial, and offered probation; after trial, probation was no longer on the table because the trial court had listened to witnesses. However, Henry must present some evidence that the "higher sentence was imposed as punishment for [his assertion] of [his jury trial] right." (*People v. Angus* (1980) 114 Cal.App.3d 973, 989–990.) We find Henry has failed to establish that the trial court's reading of the probation report improperly influenced his sentence. On the contrary, the trial court's decision to impose a harsher sentence was the result of its observations of the testimony of the victims, particularly the child victim who was extremely frightened by the assault with a gun. The court so indicated the basis for its sentence at trial: "I listened to the entire record [of trial], not just the conduct." Thus, the trial court properly exercised its sentencing discretion based upon its personal observations during trial and the presentence probation report that permit the trial court to impose a higher sentence than was offered during pretrial. (*In re Lewallen*, *supra*, 23 Cal.3d at p. 281, fn. omitted.)

8

## II.	Hall's Sentence

Hall argues the trial court abused its discretion in imposing the upper term on count 1 because the trial court relied on his extensive juvenile history as set forth in his probation report, but the probation report is "extremely unclear" and does not support the finding of an extensive juvenile history.  Further, Hall joins in Henry's argument that he was penalized for asserting his right to a jury trial.  Respondent asserts that Hall forfeited the issue by failing to request clarification of his juvenile history in the trial court; but in any event, the trial court did not abuse its discretion because several factors support imposition of the upper term, and it is not reasonably probable the trial court would have chosen a lower term if it had more information about Hall's juvenile history.

### A.	*Factual Background*

Hall's probation report states that he, born in 1992, suffered four sustained juvenile petitions, but the report discloses two petitions, each of which has two counts: (1) the first petition, filed June 29, 2009, consisting of one count of minor in possession of a firearm with a prior (disposition date Apr. 12, 2002),[3] and one count of possession of live ammunition with a prior (disposition date Aug. 9, 2007), Case No. 629; and (2) the second petition, filed July 21, 2009, consisting of one count of burglary (disposition date of September 29, 2009, with camp community placement of eight years), Case No. 721. The record also discloses a third petition, Case No. 810, consisting of one count of burglary, a disposition date of April 12, 2010, with suitable placement.  While on probation for his juvenile offenses, Hall received several referrals to drug treatment programs, but failed to provide his probation officer with any verification of enrollment. While on probation, Hall tested positive for marijuana and cocaine, and was supervised as a juvenile at the Firestone Office Intensive Gang Unit.  Hall's adult history consisted of the current case.

---

[3] This date appears to be a typographical error as the petition as a whole was filed June 27, 2007, and count 2 was disposed of on August 9, 2007.

The probation report noted that Hall "has suffered four prior juvenile sustained petitions of the following nature:  burglary, possession of a firearm with prior, possession of live ammunition, and burglary," and commented that his "crimes have escalated and resulted in the filing . . . of an adult matter."  The report noted that the crimes involved violence used to obtain property of others, Hall used a firearm, and his "behavior . . . suggest[s] that he has violent tendencies and predatory habits."  Although Hall had received community based intervention, it had not deterred his criminal behavior.  "Due to the gun allegation, the violence utilized against the victims, there is a need for [Hall]'s removal from the community and confine[ment] at the state level at this time."  The probation department recommended the trial court deny probation, and due to the aggravating factors imposition of the high term was warranted.

During the sentencing hearing, Hall's counsel requested that the court impose the low term on count 1.  The prosecution asked for imposition of the midterm.  The court found that with the exception of counts 2 and 3, all of the crimes occurred at different times with different victims, and for that reason the court would impose consecutive sentences.  The court told both defense and the prosecution that while it gave "great weight" to their recommendations, it disagreed with their assessment of appropriate punishment.  The court noted that, Hall "has an extensive juvenile history, including [the] most recent of which is in December of 2009, [when he] was given [an] eight year camp community placement," and based upon the [Hall]'s record the high term was warranted. Hall did not object.

### B.    Discussion

Hall argues that while the probation report states he suffered four juvenile "sustained petitions," he in fact suffered only two (Nos. 629 and 721), and the disposition date of April 2002 "casts that entry in a suspect light."  He contends we cannot rely on inaccurate information and the trial court's reliance thereon constituted an abuse of discretion because the trial court did not exercise informed discretion.

10

First, Hall forfeited the issue at trial by failing to raise it. (*People v. Scott* (1994) 9 Cal.4th 331, 353, fn. 15.) *Scott* held that lack of a timely and meaningful objection to a sentencing decision may forfeit a party's claim of error on appeal. This forfeiture rule extends all the way to "claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices. Included in this category are cases in which the stated reasons allegedly do not apply to the particular case, and cases in which the court purportedly erred because it double-counted a particular sentencing factor, misweighed the various factors, or failed to state any reasons or give a sufficient number of valid reasons." (*Ibid.*)

Second, the inaccuracies in the probation report do not rise to the level of a denial of due process. "Although not all the procedural safeguards required at trial also apply in a sentencing or probation hearing, such a hearing violates due process if it is fundamentally unfair." (*People v. Eckley* (2004) 123 Cal.App.4th 1072, 1080.) "Reliability of the information considered by the court is the key issue in determining fundamental fairness" in this context. (*People v. Arbuckle* (1978) 22 Cal.3d 749, 754– 755.) "A court's reliance, in its sentencing and probation decisions, on factually erroneous sentencing reports or other incorrect or unreliable information can constitute a denial of due process." (*Eckley*, at p. 1080.) In *Eckley*, the defendant was charged with child abuse based upon her misguided treatment of her children for food poisoning. The evidence at trial established that the children, who were taken to the emergency room, experienced seizures and low-blood sodium, but recovered the next day. (*Id.* at pp. 1074– 1077.) The probation report stated that the children were in "critical condition" and the daughter's condition was "'life threatening'" and contained other statements not supported by the evidence at trial. (*Id.* at pp. 1078–1080.) *Eckley* held reliance on the probation report was improper because it contained inaccurate information on which the trial court relied in sentencing, and remanded for sentencing. (*Id.* at pp. 1080–1081.)

Here, in contrast, Hall complains that the probation report contained a date that would have made him nine years old at the time of the offense; outlines in detail only

11

three petitions, while it asserts there were four; and failed to specify the nature and degree of the offenses. Our review of the probation report indicates these errors are less momentous than Hall asserts. First, the mistaken date is patently a typographical error given its context: the petition date is June 29, 2007 and the disposition date of the second count is August 9, 2007. Second, the report refers to three petitions and Hall did not dispute at trial the content or accuracy of the charges in those petitions. As a result, the probation report supports the court's factual findings at sentencing that were ostensibly based upon the report. (*People v. Gragg* (1989) 216 Cal.App.3d 32, 46.)

Further, even without considering the probation report, other factors support the trial court's sentence. Hall's conduct in engaging in repeated robberies indicated he was a danger to society (Cal. Rules of Court, rule 4.421(b)(1)). As a single factor in aggravation is sufficient to impose the upper term (*People v. Black* (2007) 41 Cal.4th 799, 815), "it is not reasonably probable the [trial] court would have [imposed] a lesser sentence" absent the probation report. (*People v. Price* (1991) 1 Cal.4th 324, 491–492.)

To the extent Hall joins in Henry's argument that he was punished for exercising his right to a jury trial, we find no error. Hall's brief does not point to any facts suggesting the trial court penalized him for going to trial, nor does he develop any cogent argument or cite to any legal authority. Nonetheless, the record does not support any finding that the trial court penalized Hall; rather, as discussed above, the record demonstrates it relied on proper sentencing factors in imposing the upper term.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

JOHNSON, J.

We concur:

MALLANO, P. J.                    CHANEY, J.

12