[Crim. No. 12284. First Dist., Div. One. Nov. 7, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
RONALD LEE BUFORD, Defendant and Appellant.

976

## COUNSEL

John Henry Denton, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, W. Eric Collins and Kenneth C. Young, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MOLINARI, P. J.**—On this appeal from a judgment entered following revocation of probation, appellant makes five contentions: (1) that he was deprived of due process because of lack of a prerevocation hearing; (2) that he was deprived of due process because he received no notice of the charges upon which revocation was based; (3) that he was denied his right to confront and cross-examine witnesses at the revocation hearing; (4) that the court conducted the hearing improperly, taking an adversary position against him; and (5) that the findings of probation violations were not supported by the evidence.

A jury found appellant guilty of three violations of section 288 of the Penal Code. On January 25, 1972, the trial court suspended imposition of sentence and placed appellant on probation for five years with conditions including that he serve seven months in the county jail, report at least once each month to his probation officer, follow all directives of said officer, seek and maintain regular employment, not change employment or residence without prior permission of his probation officer, and obey all laws of the community and be of good conduct. At this time the court admonished appellant to bear in mind the registration provisions of the Penal Code in connection with the offenses of which he had been convicted.

On March 9, 1973, petitions for revocation of probation were filed in this action (No. 51031) and in three other actions (Nos. 43953, 46831, and 44697). The matters were first called for hearing on March 14, 1973, at which time the court informed appellant and his counsel that it was particularly concerned with alleged violations such as nonreporting, nonpayment of restitution, and similar violations apart from an alleged subsequent offense (No. 54705). The court instructed appellant concerning his rights to representation by counsel and to cross-examination of adverse witnesses as well as the availability of the process of the court to produce

witnesses. It appearing that appellant had not been served with copies of the petitions in Nos. 46831 and 51031, the court directed that service be made. The hearing was then continued to March 21, 1973, because of illness of the probation officer.

On March 21, the court detailed the allegations in the other three actions, indicating its readiness to proceed. It appeared that appellant had not yet been served with a copy of the petition in this action. The court ordered that an amended petition be filed and that it be served on appellant. Service was effected in open court the same day. Regarding allegations of the subsequent offense, the court refused to receive in evidence a transcript of the preliminary hearing in that matter absent a stipulation by counsel. Hearing was again continued.

On March 29, 1973, the probation revocation hearing was held. After hearing and considering all of the evidence, the court revoked probation. The next day it pronounced judgment and sentenced appellant to prison.[1]

■  We consider appellant's first contention—that he was deprived of due process in that the court failed to hold a prerevocation hearing. The purported right to a prerevocation hearing finds its origin in *Morrissey* v. *Brewer* (1972) 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593], in which the United States Supreme Court held that a parolee facing revocation is entitled to minimal due process, because normally he loses his conditional liberty and is taken into custody pending the outcome of the parole revocation hearing. The court held that reasonably near the place of the alleged violation or arrest and as promptly as convenient, a preliminary hearing must be held to determine whether there is probable cause or reason to believe that a parole violation has occurred.[2] Such an inquiry is mandated by due process because typically there is a substantial time lag between arrest and eventual determination of the question of parole revocation, and the arrest may occur at a place distant from the situs of the final revocation hearing (408 U.S. at p. 485 [33 L.Ed.2d at pp. 496-497]). The procedures required in parole revocation therefore include a prerevocation hearing close in time and place to the alleged violation, and a revocation hearing

---

[1]No appeal was taken from the court's order modifying probation in the other three actions by adding thereto a condition that appellant serve one year in jail (suspended).

[2]The prerevocation hearing is variously referred to as a "preliminary hearing" (*Morrissey* v. *Brewer, supra,* 408 U.S. at p. 485 [33 L.Ed.2d at pp. 496-497]), and a "probable cause" hearing (*People* v. *Ruster* (1974) 40 Cal.App.3d 865, 874 [115 Cal.Rptr. 572]). We adopt the California Supreme Court's nomenclature, "prerevocation hearing." (*In re La Croix* (1974) 12 Cal.3d 146 [115 Cal.Rptr. 344, 524 P.2d 816].)

held at a later time and a different place. (*Id.* at pp. 485-489 [33 L.Ed.2d at pp. 496-499].)

The due process safeguards established in *Morrissey* apply to probation revocation as well as parole revocation. (*Gagnon* v. *Scarpelli* (1973) 411 U.S. 778, 782 [36 L.Ed.2d 656, 661-662, 93 S.Ct. 1756]; *People* v. *Vickers* (1972) 8 Cal.3d 451 [105 Cal.Rptr. 305, 503 P.2d 1313].) However, neither *Morrissey* nor its progeny held that prerevocation hearing is a prerequisite to revoking probation in California. *Gagnon* v. *Scarpelli, supra,* indicates that a prerevocation hearing is required in probation cases (411 U.S. at pp. 782, 786 [36 L.Ed.2d at pp. 661-662, 664]). But that case arose in Wisconsin, where probation is supervised and revoked solely by an administrative agency. (*Id.* at pp. 780, 784 [36 L.Ed.2d at pp. 661-663].) In California, on the other hand, revocation of probation is a judicial process, significantly distinguishable from parole revocation. We deem the holding in *Gagnon* v. *Scarpelli* inapplicable to our system.

The case at bench illustrates the distinction between the mechanics of parole revocation and probation revocation in our state. The reasons for and the rights protected by requiring two hearings in the former often are inapplicable to and adequately protected by one hearing in the latter. A major reason for the prerevocation hearing requirement in *Morrissey* is the time lag between arrest of the parolee and final determination on the merits of the parole agent's allegations. It is unfair to disrupt the parolee's life during such time without any determination as to the existence of probable cause for revocation. By contrast, the time consumed by the procedures through which appellant's probation was revoked amounted to a total of 21 days from the day the petitions to revoke were filed until he was sentenced to prison.

The other major factor compelling a prerevocation parole hearing is that the parolee often is arrested some distance from the penal institution where the final hearing will be held. The prerevocation hearing near the place of arrest affords him a better opportunity to present witnesses. (*Morrissey* v. *Brewer, supra,* 408 U.S. at p. 485 [33 L.Ed.2d at pp. 496-497].) While it is true that the probation revocation hearing before the superior court which granted probation might conceivably be held some distance from the place of arrest, that is not the usual situation. As in the case before us, most probationers are supervised within the county in which probation is granted, and they are not taken to remote locations for revocation hearings. Furthermore, the probation revocation hearing in California, unlike a parole revocation hearing, is a judicial proceeding providing the probationer with the use of court processes, thus assuring him the presence of necessary witnesses.

It must be kept in mind that due process is flexible, and "calls for such procedural protections as the particular situation demands." (*Morrissey* v. *Brewer, supra,* 408 U.S. at p. 481 [33 L.Ed.2d at p. 494]; see also *Gagnon* v. *Scarpelli, supra,* 411 U.S. at p. 790 [36 L.Ed.2d at p. 666].) Thus, a prerevocation hearing is not mandated where the circumstances requiring it do not exist. For example, a prerevocation hearing is unnecessary in rescinding a parole date where the prospective parolee is still incarcerated. (*In re Prewitt* (1972) 8 Cal.3d 470, 474, fn. 6 [105 Cal.Rptr. 318, 503 P.2d 1326].) Neither is it required where probable cause to believe a violation has occurred has been determined in a preliminary hearing on a subsequent offense and the defendant has been given notice that said proceedings would serve this dual purpose. (*In re La Croix* (1974) 12 Cal.3d 146, 150-151 [115 Cal.Rptr. 344, 524 P.2d 816]; *In re Law* (1973) 10 Cal.3d 21 [109 Cal.Rptr. 573, 513 P.2d 621].)

Furthermore, the California Supreme Court has clearly indicated that a unitary hearing may suffice in probation revocation cases. (*People* v. *Vickers, supra,* 8 Cal.3d at p. 459, fn. 8; *In re Bye* (1974) 12 Cal.3d 96, 107 [115 Cal.Rptr. 382, 524 P.2d 854].) In *In re La Croix, supra,* the court did not reach the question but noted that a unitary hearing may satisfy due process where it is conducted at such time and in such manner as to satisfy *Morrissey.* (*In re La Croix, supra,* 12 Cal.3d at p. 153, fn. 3.) We hold that the hearing below satisfied the requirements of due process and that a prerevocation hearing was not required.

Appellant argues, relying on *In re Castaneda* (1973) 34 Cal.App.3d 825 [110 Cal.Rptr. 385], that the holding of a preliminary or prerevocation hearing is jurisdictional. We do not agree. In a criminal proceeding, if a preliminary hearing is wrongfully denied, upon proper objection the superior court has no jurisdiction to proceed. The *La Croix* court held that a prerevocation parole hearing is distinguishable because the Adult Authority has continuing jurisdiction over its parolees, and the preliminary hearing is "necessary" only to insure fairness, not jurisdiction. (*In re La Croix, supra,* 12 Cal.3d at p. 154, fn. 5.) Just as the Adult Authority has continuing jurisdiction over its parolees (Pen. Code, § 3056), so the court has continuing jurisdiction over its probationers. (E.g., Pen. Code, §§ 1203.2, subds. (a)-(c), 1203.3.) Therefore, the prerevocation hearing is not necessary to establish the court's jurisdiction, and is only provided for in *Morrissey* to insure fairness. Where the unitary hearing is fair and due process is satisfied, the absence of a prerevocation hearing has no effect on the court's jurisdiction.

The People maintain that appellant was afforded a prerevocation hear-

ing, but their position is not supported by the record. While on the one hand they claim that the hearing of March 14, 1973, fulfilled *Morrissey* requirements for a prerevocation hearing, on the other hand they concede that at that time appellant had received notice only in Nos. 43953 and 44697. Appellant did not receive notice in this action (No. 51031) until March 21, and he did not receive notice of the violation unique to said action (failure to register as a sex offender) until some time between March 22 and March 29, 1973. Clearly, *Morrissey's* requirements for a valid prerevocation hearing were not satisfied on March 14. The People also argue that appellant waived a prerevocation hearing. This he clearly did not do. Throughout the proceedings defense counsel insisted upon being given proper notice and an opportunity to know the charges facing appellant. Finally, the People assert that the preliminary hearing in the subsequent criminal case satisfied due process. In light of our holding we need not reach this issue. We note, however, that the alleged commission of a subsequent offense was dropped as a ground for revocation and that, in any event, there is nothing in the record to indicate that appellant was given notice that those proceedings would satisfy a dual purpose. (See *In re La Croix, supra,* 12 Cal.3d at pp. 150-151.)

■ Appellant's second contention is that he was deprived of due process because he received no notice of the charges upon which revocation was predicated, as is required by *Morrissey* (408 U.S. at p. 489 [33 L.Ed.2d at p. 499]). Appellant and his attorney were served with the petition in this action on March 21, 1973, in open court. He was then granted a continuance in order to prepare his defense to the charges contained therein. The next day the probation officer prepared a new report containing substantially the same allegations as the petition with which appellant had been served, but adding as an additional ground for revocation that appellant had failed to register as a sex offender pursuant to section 290 of the Penal Code. Apparently appellant was served with this report sometime between March 22 and March 29, for at the revocation hearing held on the latter date he did not seek a continuance or additional time for preparation. Neither did he contend that he had not been given the requisite notice. Under the circumstances, he cannot now claim a denial of due process. (*People* v. *Dominguez* (1973) 35 Cal.App.3d 18, 21-23 [112 Cal.Rptr. 98].)

■ Appellant's third contention is that he was denied his right to confront and cross-examine witnesses at the revocation hearing. (*Morrissey* v. *Brewer, supra,* 408 U.S. 471, 489 [33 L.Ed.2d 484, 499].) His threshold argument in this regard is that the court erred in admitting hearsay evidence. However, the use of hearsay evidence in the context of a revocation

hearing is not error. (*Morrissey* v. *Brewer, supra,* 408 U.S. at p. 489 [33 L.Ed.2d at p. 499]; Pen. Code, § 1203.2, subd. (a).) Appellant urges, nevertheless, that the use of hearsay deprived him of the confrontation right. In particular he complains that most of Probation Officer McDaniel's testimony regarding alleged violations was based upon a probation report prepared by another officer, Mr. Karkazis, and that there was no showing that the latter was unavailable to testify. While this is true, it is also true that appellant's objection to McDaniel's testimony was based on the hearsay rule alone, not on the right to confront and cross-examine the hearsay declarant. At the beginning of the hearing the court had informed appellant of his right to confrontation and cross-examination; the court reiterated this admonition at least twice thereafter. Under the circumstances, appellant's failure to object to the ground now presented and/or to request that other witnesses be called must be deemed a waiver of the rights under consideration. (*In re Melendez* (1974) 37 Cal.App.3d 967, 974 [112 Cal.Rptr. 755].)

■ Appellant's fourth contention is that the court took over the role of prosecutor at the revocation hearing and took an adversary position, to his prejudice. It is true that the entire direct and redirect examination of McDaniel was by the court. *Morrissey* requires that a parole revocation hearing be conducted by a " 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; . . ." (408 U.S. at p. 489 [33 L.Ed.2d at p. 499].) The court's conduct below did not demonstrate that it was not neutral and detached. Our reading of the record indicates that the court was motivated by an earnest desire to ascertain the facts. A probation revocation hearing is not to be equated with a criminal prosecution in any sense. It is a narrow inquiry, and its procedures are to be flexible. (*Morrissey* v. *Brewer, supra,* 408 U.S. at p. 489 [33 L.Ed.2d at p. 499].) While it is arguable that the trial court carried matters to excess when it completely took over the examination of the People's witness, in doing so it did not deprive appellant of a fair hearing.

Appellant's fifth and final contention is that the findings of probation violation were not supported by the evidence. Timothy McDaniel, appellant's last probation officer, testified that appellant's file showed the following history. Appellant was released from the county jail on July 5, 1972. On July 21, 1972, he arranged for an office visit with his then probation officer, Karkazis. Appellant failed to appear for that meeting. Three days later he phoned and made an appointment for the following day, which he kept. He failed to keep the next appointment, on August 18, 1972, but again phoned on August 31, and arranged a meeting for September 14.

Appellant did not keep that appointment, but showed up the next day; Karkazis was not in.

Appellant's file was transferred to McDaniel on October 6, 1972. On October 16, he sent a letter to appellant asking him to call as soon as possible; but the letter was not sent to appellant's last known address, and there was no response. On November 8, McDaniel attempted to reach appellant through a neighbor, but with no apparent results. On November 13, he sent a letter to appellant's last known address, advising him that if he did not come in McDaniel would be forced to revoke his probation. Appellant appeared at McDaniel's office on November 16, 1972. McDaniel testified that it was his general practice, although he made exceptions, to explain to a probationer the latter's duty to report on a regular monthly basis. He did not recall whether he did so at this meeting, which constituted his first and last contact with appellant. (McDaniel was informed on January 10, 1973, that appellant had been taken into custody.) He agreed that in fact appellant had never missed a prearranged appointment with him after November 16, 1972.

As to employment, appellant's probation file indicated that he was on general assistance. At the November 16 meeting appellant told McDaniel that he was getting jobs every now and then as a musician. They did not discuss the fact that appellant might be on welfare. McDaniel testified that he was not sufficiently familiar with the file to state whether or not appellant had ever offered any reason for his failure to seek and maintain gainful employment, although there was some indication that he had suffered various ailments. Regarding change of address the file showed that appellant had moved several times; on some occasions he had done so without prior approval of the probation officer. As to the others, McDaniel was not sufficiently familiar with the file to say whether or not appellant had asked permission to move.

On or about March 21, 1973, McDaniel contacted Sergeant Oliver of the morals division of the Oakland Police Department and ascertained that appellant had not registered as a sex offender pursuant to section 290 of the Penal Code. McDaniel had never discussed this aspect of the case with appellant.

██ Based upon this evidence the court revoked probation in all four cases. In this action the court found that appellant had violated the terms of his probation in that he had failed to report as directed, failed to maintain regular employment, changed his address without prior approval of his probation officer; and failed to register as a sex offender. We hold that the findings were not supported by substantial evidence and that the court

abused its discretion in revoking probation based upon the evidence before it.

■ The superior court may revoke probation in the interests of justice if it has reason to believe that the probationer has committed another offense or otherwise violated the terms of his probation. (Pen. Code, § 1203.2, subd. (a).) The court having expressly declined to consider any evidence of the subsequent offense, its decision to revoke must have been predicated upon a determination that appellant had otherwise violated the terms of his probation. Although the grounds for revocation need not be established beyond a reasonable doubt, they must be clearly and satisfactorily shown. (E.g., *People* v. *Hayko* (1970) 7 Cal.App.3d 604, 609 [86 Cal.Rptr. 726].) Revocation rests in the sound discretion of the court. Although that discretion is very broad, the court may not act arbitrarily or capriciously; its determination must be based upon the facts before it. (*In re Davis* (1951) 37 Cal.2d 872 [236 P.2d 579]; *People* v. *Walker* (1963) 215 Cal.App.2d 609, 611-612 [30 Cal.Rptr. 440].) In light of these well-established principles of law, we consider in turn each of the court's four findings of probation violation.

*Failure to Report.*

■ One of the conditions of appellant's probation was that he "report forthwith to the Probation Officer of Alameda County and thereafter as directed, but not less frequently than once each month." Appellant's probation file revealed that, at worst, he was tardy and undependable in reporting. However, on the few occasions when he failed to keep an appointment, he attempted to remedy the situation by making another appointment. Appellant cannot be faulted for failing to respond to McDaniel's initial communications, since one was a letter sent to an address other than appellant's last known address, and the other was a call to a neighbor who may or may not have contacted appellant. When McDaniel sent a letter to appellant's last known address, the latter responded at once. McDaniel, appellant's probation officer at the time of the hearing, testified that he did not recall having explained to appellant his duty to report on a regular monthly basis, and that appellant had never missed a prearranged meeting with McDaniel. We conclude that the finding that appellant had failed to report as directed was not supported by the evidence.

*Failure to Maintain Employment.*

A second condition of appellant's probation was that he "seek and maintain regular employment." Appellant's file showed that he was on

general assistance, but McDaniel did not discuss this fact with him. At their meeting of November 16, 1972, appellant told McDaniel that he was getting occasional jobs as a musician. McDaniel was not sufficiently familiar with appellant's file to state whether or not the latter had offered any reason why he could not be gainfully employed, although there was some indication in the file of various ailments. The People made no showing whatsoever that regular employment was available to appellant. It cannot be presumed from a silent record, especially in light of the state of the economy, that this was the case. There was no substantial evidence before the trial court from which it properly could conclude that through appellant's fault he failed to comply with this condition of probation.

### Changes of Residence.

A third condition of probation was that appellant "not change place of . . . residence without first obtaining the permission of the Probation Officer." The file showed that appellant had changed residence several times. On some occasions he had not notified the probation department in advance. As to the others, McDaniel was not sufficiently familiar with the record to say whether appellant had asked permission to move. There was no showing that appellant had not kept the department informed of his address, and there was no evidence from which it could be inferred that appellant had attempted to evade his probation officer. Under the circumstances, basing revocation of probation on this ground constituted an abuse of discretion.

### Failure to Register.

Appellant having been convicted of three counts of violation of section 288 of the Penal Code, he was required to register with the chief of police of the city in which he resides. (Pen. Code, § 290.) Appellant's failure to do so provided the final ground upon which the trial court based its decision to revoke. Section 290 provides that when a defendant is released on probation the court must inform him of his duty to register and "shall require the person to read and sign such form as may be required by the Department of Justice, stating that the duty of the person to register under this section has been explained to him." At the time of granting probation, however, the court merely directed appellant "to bear in mind the registration provisions of the Penal Code in connection with the offense with which he has been convicted. *And the Probation Officer is directed to be sure he does take such registration steps as are required.*" One of the conditions of appellant's probation was that he serve seven months in the county jail. Section 290 also provides that when a defendant is discharged from jail the

official in charge thereof "shall require the person to read and sign" the above-mentioned form.

There was no evidence before the revoking court from which it could infer that either the court granting probation or the official in charge of the county jail complied with the requirements of section 290. The only evidence on this point was that appellant's probation officer had been told by the Oakland Police Department that appellant was not registered. McDaniel had never discussed with appellant whether or not he had registered, although the sentencing court clearly directed the probation officer to do so. To revoke appellant's probation for his noncompliance with section 290, while excusing the noncompliance of the sentencing court, the jail officials, and/or the probation officer constituted an abuse of discretion.

We conclude that the trial court, upon the evidence before it, improperly revoked appellant's probation.

The judgment is reversed, with directions to the trial court to set aside the order revoking probation.

Sims, J., and Elkington, J., concurred.