Filed 10/26/15  P. v. Murray CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MALCOLM J. MURRAY,<br><br>    Defendant and Appellant. | B256785<br><br>(Los Angeles County<br>Super. Ct. No. BA385124) |

APPEAL from an order of the Superior Court of Los Angeles County. Richard Kemalyan, Judge.  Affirmed.

Christine M. Aros, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and J. Michael Lehmann, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant Malcolm Jarrod Murray appeals from the order revoking and terminating his probation. The trial court executed defendant's suspended four-year prison sentence for sale of a controlled substance (Health & Saf. Code, § 11352, subd. (a)) and possession of cocaine base (Health & Saf. Code, § 11351.5).

Defendant appeals on the grounds that he was denied his due process rights to notice and an opportunity to be heard when the court found him in violation of probation based on grounds not included in the notice he received.

## FACTUAL AND PROCEDURAL HISTORY

**Prosecution Evidence**

On September 14, 2011, defendant pleaded "no contest" to the aforementioned narcotics offenses. The trial court suspended execution of sentence and placed defendant on felony probation for 36 months under certain terms and conditions.

On December 6, 2013, the district attorney filed a motion requesting revocation of defendant's probation. On February 27, 2014, a probation violation hearing was held. Officer Issac Fernandez testified that he and his partner, Officer Socorro Loza, had encountered defendant while on patrol in Skid Row on December 4, 2013. The officers saw a group of individuals that included defendant, and the officers greeted him. Without being asked, defendant said to the officers, "I'm not on parole nor probation." Although the officers did not ask defendant for identification, he showed them a North or South Carolina identification card. He said he had rented a car.

Officer Loza used police resources to check defendant's status and discovered he was on probation. The officers detained defendant pending a probation compliance check. He was patted down and released. Officer Fernandez found crumpled currency in defendant's pocket and returned it to the pocket. Defendant had no drugs on his person. Officer Fernandez spoke with a probation officer regarding defendant. After doing so, the officers warned defendant that he could not stay in the area because he had a stay-away order regarding narcotics users, and the area was known for narcotics users and selling.

The officers later conducted a "spontaneous observation post" from the roof of the nearby police station. Officers Fernandez and Loza saw defendant return to a spot near the location where the officers had made contact with him. As the officers watched, defendant was approached by a Hispanic woman. She gave defendant some currency, and defendant opened his hand to reveal an off-white solid resembling cocaine base. He chipped off a piece and gave it to the female. After the woman left, defendant continued to stand on the corner. He was alone for only approximately 20 seconds before a Black male and a Black female approached. Defendant opened his palm and chipped off a piece of the off-white rock for the male and a piece for the female. The male entered an apartment complex, and the female followed defendant as he began walking southbound on Maple Avenue. The officers decided to go after defendant and detain him.

Upon detaining defendant, officers found $87.04 in small denominations in his pocket. Defendant had no narcotics paraphernalia and showed no signs of being under the influence or of habitual cocaine use. Defendant had no drugs. The Black woman who followed him was also detained and had no drugs on her person. Defendant was arrested. Officer Loza testified that the woman stated without prompting that defendant "had crack in his ass," but Officer Loza did not include that in her report. A later strip search of defendant revealed no drugs.

During the booking process, the officers found keys on defendant's person. Officer Fernandez asked defendant where his car was located and defendant said it was parked near the corner of 9th Street and San Pedro Street, which is within the high narcotics area. Officer Loza testified that one of the main reasons police asked individuals with car keys where their cars were parked was to avoid burglaries and theft. Using the remote, the officers located the car. A search yielded a black plastic bag containing multiple off-white solids resembling cocaine base, which was found on the floorboard behind the driver's seat. The officers found off-white crumbs resembling cocaine base on the rear seat and a backpack containing defendant's California identification. The car contained no narcotics paraphernalia. Officer Loza believed the contents of the black bag were possessed for purposes of sale.

3

Gerald Blanton, a criminalist, testified that he reviewed the test data from the analysis of the material found in defendant's car. He determined the substance contained .57 grams net of cocaine in the form of cocaine base.

**Defense Evidence**

Defendant said that when the officers first contacted him he was merely hanging out with a few people he knew. He had just arrived back in town and was looking for a residence. He was never given paperwork telling him he was not to congregate or loiter around individuals known to him to be drug users or drug sellers. He said he only knew one of the persons with him and could not say that person was a user or seller. He did not know the area of 5th Street and Maple Avenue to be a high narcotics area. He had parked a little over a mile away because parking in downtown was complicated. The officers patted him down and told him he could not be in that area. He had no cocaine on his person. Defendant did not always put his money in his wallet. He had recently received a disability check for $866.40. Defendant did not recall being approached by a female Hispanic but was approached by the male and female Blacks. He did not give them anything.

Defendant said he was not the only person who drove the car. His father had rented it. Defendant did not know the black plastic bag was in the car. He had never seen it before. There was no residue on the back seat. Defendant testified he did not use cocaine and was not selling it. He had stopped using it a month before.

Defendant acknowledged several prior convictions, including one in 2011 for selling cocaine base in the area of 6th Street and San Julian. He acknowledged that corner was not far from 5th Street and Maple Avenue. He admitted that he knew people use drugs in Skid Row. He was never told to stay away from the Skid Row area.

### DISCUSSION

**I. Defendant's Argument**

Defendant contends that the only noticed basis for revocation of his probation was the new criminal charge of violating Health and Safety Code section 11351.5, possession for sale of cocaine base, but the court never stated it found defendant had possessed

4

cocaine base for sale. Instead, the court found defendant violated the probation conditions requiring him to abstain from narcotics and to stay away from places where users and sellers congregate. As a result, the court failed to provide a constitutionally sufficient safeguard of defendant's due process rights by finding him in violation of probation based on alleged violations for which he never received notice.

Second, although the trial court found defendant had violated probation in a second way—by possessing a controlled substance, this Court cannot say that the trial court would have sentenced defendant to prison based on this violation alone. In making its ruling, the court stated there were four bases for violating defendant's probation, and in light of these violations it did not believe it had "any other choice." Yet, defendant asserts, he was not given notice of two of the violations, and the court never found that defendant possessed cocaine base for sale. Since it is open to question whether the court would have terminated probation and imposed the prison sentence based on the remaining violation, defendant argues, the matter should be remanded for the trial court to consider whether the single violation of possession of narcotics warrants the termination of probation and imposition of a prison term.

## II. Proceedings Below

After the People rested, defense counsel moved to exclude evidence of the items found in defendant's rental car under *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*). Counsel argued that the primary impetus for Officer Fernandez asking for the location of the car was to see if there were drugs in the car. Therefore, they should have read defendant his *Miranda* rights. The prosecutor argued that, under the circumstances, it was not unreasonable for the officers to ask where the car was. It could not be said the question was posed solely for the purpose of finding drugs. Defendant was not arrested for possession for sales, but only for narcotics loitering.

The court stated it was not sure that asking an arrestee with car keys the location of his or her car fell within the exception for routine booking questions. The court observed that defendant told the officers he had rented a car, and the officers were aware

5

that defendant was subject to search conditions.  Therefore, they had the right to search property in his control and possession and did not violate *Miranda*.

In revoking defendant's probation, the trial court noted defendant's four-year suspended sentence and 36-month probationary term and stated:  "And, of course, there were conditions and there were several conditions as typically there are.  But according to the minute order, he was ordered not to use or possess any narcotics, dangerous or restricted drugs or associated paraphernalia except with a valid prescription, and to stay away from places where users or sellers congregate, and to not associate with drug users or sellers unless it is in a drug treatment program.  We know from the case law that the last sentence, we actually apply to known drug users or sellers. . . .  The fact remains that even if the court sustained the objection on the *Miranda* issue, that there's still probation violations here and there's at least three of them, and that's really the problem.  I think that the issue of the inquiry to Mr. Murray really originates from Mr. Murray having keys to the vehicle in his possession at the stop at 8:40 and indicating that he's just arrived from North Carolina giving the officers a North Carolina I.D.  And then at the time he's arrested subsequently about an hour later he has, you know, the keys in his possession.  And so the inquiry comes up and the officers are entitled under the search and seizure conditions as referenced in the September 14, 2011, plea to search his person and property.  And he's acknowledged by having the keys that he's in constructive possession of the vehicle of the question that was asked of Mr. Murray, was anyone else that drove that vehicle and what he said was it was rented in his father's name.  Nobody has said anything else about anybody being in the car other than Mr. Murray, that was his testimony.  So I don't have any other testimony other than the fact that he came from North Carolina, he was in the vehicle, he has the keys, and he was the only one.  And even if he was not the only one, given, you know, making that leap, the fact remains [] he had the keys and he was in constructive possession.  So in my judgment, the search of the vehicle was a valid search of the vehicle pursuant to his probation conditions.  Even if  I set that aside, as I've indicated, we have three other violations.  And one is he was not to own, use or possess—let me start over.  He was to stay away from places where users,

6

buyers or sellers congregate. He's testified, he's testified that he was aware that users and buyers, that there are people that use in the Skid Row area. He knew that in 2011. He knew that in 2013. [Defendant's counsel] indicates that perhaps in Mr. Murray's mind this was not the location of his arrest in 2013, was not the Skid Row area. The defendant never said that. But I do have to say that based upon my time on the bench, it's almost very close to the court being able to take judicial notice that the place of his arrest on 2013 was within the area that is typically called the Skid Row area where he was arrested in 2011. So I find that to be a violation of his probation. That he is—he is, has not stayed away from a place where users or sellers congregate. Second is the issue of whether buyers—he was aware of buyers or sellers in this area that were known to him. I'm not so sure the court can make that assumption based upon what he said. The third area that he is to stay away from—he is not to own, use or possess, buy or sell any controlled substance or dangerous or restricted drug. If the court believes that the probationary conditions were appropriate for observing the materials in his car, then he is in possession of a controlled substance. Finally, he was not to, according to the terms of probation in 2011, to use any narcotic. And his testimony is that in November of 2011 was the last time he utilized cocaine base, which is a controlled substance. So I think there's at least two, perhaps three, and if we allow the—if we don't sustain the objection to the purported *Miranda* issue, you know, we have four [bases] for violating his probation and I don't feel I have any other choice other than to find that Mr. Murray is in violation of his probation."

The trial court subsequently noted that defendant was sentenced prior to realignment but violated probation after realignment went into effect. The court found it appropriate to impose the original sentence to state prison, since that was the original determination. The court stated, "Based upon the violations in this case, I really don't think I have any other choice."

## III. Relevant Authority

A trial court may revoke probation in the interest of justice when it has reason to believe that the probationer has committed another offense or has otherwise violated the

terms of probation. (Pen. Code, § 1203.2, subd. (a).) The grounds for revocation of probation must be shown by a preponderance of the evidence. (*People v. Rodriguez* (1990) 51 Cal.3d 437, 441, 447.) This court reviews the trial court's determination of revocation of probation for an abuse of discretion. (*Id*. at pp. 443, 445; *People v. Self* (1991) 233 Cal.App.3d 414, 417 (*Self*).) Discretion is abused when the decision is arbitrary or capricious or not supported by the facts before the court. (*People v. Zaring* (1992) 8 Cal.App.4th 362, 378; *People v. Buford* (1974) 42 Cal.App.3d 975, 985-987 (*Buford*).) A reviewing court should interfere with the trial court's decision to revoke probation only in extreme cases. (*Rodriguez*, at p. 443.)

Penal Code section 1203.2 "prescribes few procedural guidelines governing probation revocation proceedings." (*People v. Arreola* (1994) 7 Cal.4th 1144, 1152, fn. omitted.) It is well established, however, that a criminal defendant placed on probation has certain due process rights in proceedings to revoke probation. At a minimum, these rights include (a) written notice of the claimed violations of probation; (b) disclosure to the probationer of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a neutral and detached hearing body; and (f) a written statement by the factfinders as to the evidence relied on and the reasons for revoking probation. (*Gagnon v. Scarpelli* (1973) 411 U.S. 778, 786; *Morrissey v. Brewer* (1972) 408 U.S. 471, 489; *Arreola*, at pp. 1152-1153.)

Although due process requires that the People give a defendant notice of a claimed probation violation, the less formal nature of probation violation proceedings allows some measure of flexibility in affording due process safeguards. A strict set of procedural rules is not mandated. (*People v. Vickers* (1972) 8 Cal.3d 451, 458; *People v. Felix* (1986) 178 Cal.App.3d 1168, 1172; *Buford*, *supra*, 42 Cal.App.3d at pp. 981-982.) A defendant's failure to object to the procedures, and the conduct of his or her attorney, can indicate acquiescence in the proceedings. (*Felix*, at p. 1172; *Buford*, at p. 982; *People v. Dale* (1973) 36 Cal.App.3d 191, 194-195.)

8

**IV. No Due Process Violation; No Remand Required**

Defendant complains there was a lack of precise written notice of violation of standard probation conditions for drug-related offenders as a ground for revocation. The record shows that, when the issue presented itself during the probation violation hearing, defendant did not object on the ground of lack of notice. Where a defendant fails to object in the trial court to the adequacy of the notice he or she received, the issue is forfeited on appeal. (*People v. Bright* (1996) 12 Cal.4th 652, 671, overruled on another point in *People v. Seel* (2004) 34 Cal.4th 535, 550, fn. 6; *People v. Vera* (1997) 15 Cal.4th 269, 276; *People v. Edwards* (1991) 54 Cal.3d 787, 827; *People v. Carrasco* (2006) 137 Cal.App.4th 1050, 1056.) During the officers' testimony, defense counsel did not express surprise, object that the evidence of defendant's knowledge of his stay-away condition was irrelevant, complain that he had no notice that the violation of the stay-away was a ground for revocation, or request a continuance to prepare to defend against that ground. Moreover, defendant's counsel, rather than objecting, questioned defendant regarding these probation conditions in an attempt to show that defendant was not aware of the condition, that he did not know the people around him were drug users or sellers, and that he did not know that the area in which he was found was "a high-crime area for the use of narcotics or the sales of narcotics." Thus, defendant was able to present a defense to the allegations.

In any event, although defendant's cited cases support the general proposition of entitlement to notice, they do not support a due process reversal on the facts of this case. Defendant cites *People v. Mosley* (1988) 198 Cal.App.3d 1167, in which the Court of Appeal found a denial of due process where a charged probation violation was based solely on a new rape charge. The violation hearing was heard simultaneously with the jury trial on the new charge, and the trial revealed evidence that Mosley had consumed alcohol in violation of an "abstain" term. After the jury acquitted Mosley of rape, the court found Mosley in violation of probation based on the evidence that he had consumed alcohol. (*Id.* at pp. 1170-1171.) The Court of Appeal reversed, noting that "[t]he evidentiary phase of the hearing was completed before either [Mosley] or the court was

9

aware of the charge which ultimately constituted the basis for revocation. Mosley had no opportunity to prepare and defend against that allegation." (*Id.* at p. 1174.)

It is clear from the facts of this case that all of the four probation violations mentioned by the trial court were intertwined to the degree that defendant could not claim to have been surprised, as Mosely was, by the trial court's findings. Unlike in *Mosley*, the hearing had not ended when the stay-away condition was noted by the court and the parties—the condition was the reason for defendant's initial arrest. Defendant knew from the December 6, 2013 motion requesting revocation that he was charged with possessing narcotics and for selling them. The motion included the arrest report, which stated that the officers had knowledge that defendant had an order to stay away from high narcotics areas and narcotics users, and that these facts caused the officers to arrest him for narcotics loitering, a violation of Health and Safety Code section 11532. Defendant was found in violation after a hearing that focused on the closely related issues of his presence in the area, his interactions with the persons who approached him, and the cache of narcotics in his car. The January 2, 2014 probation report, prepared prior to the setting of the revocation hearing, contained a list of defendant's probation conditions, including the conditions that he stay away from places where users, buyers, or sellers congregate, as well as a prohibition against associating with persons known to him to be controlled substance users or sellers.

Under these circumstances, we cannot conclude defendant suffered a due process violation for lack of notice of the charged violation or the conduct of the hearing. Any claim that he was prejudiced by a lack of notice of these probation conditions as grounds for violation is meritless. (*People v. Tanner* (2005) 129 Cal.App.4th 223, 236, fn. 4 ["The written [Penal Code] section 1210 review/violation report filed with the court for the . . . hearing gave [defendant] notice of his numerous breaches of the conditions of his probation under the Act"]; *Buford*, *supra*, 42 Cal.App.3d at p. 982 [due process satisfied when defendant served with revocation petition and then, after a continuance, with probation officer's new report containing same and additional grounds for revocation; defendant did not seek continuance nor argue he had not been given adequate notice];

10

*People v. Dominguez* (1973) 35 Cal.App.3d 18, 21-23 [defendant not denied due process and had adequate notice when he was informed of case number at issue; he was vocal and aware of the nature of the revocation proceeding, and neither he nor his attorney requested additional time or raised the issue of notice].) Also, as noted, defendant was ready with a defense to the allegations, asserting he did not know the area was known for narcotics use, and no one had told him he had to stay away from such an area.

Finally, the trial court was justified in revoking defendant's probation based upon its finding that he possessed cocaine, a lesser included offense of possession of cocaine for sale, in that defendant was given notice that his probation could be revoked on this ground alone. Unlike the Court of Appeal in *Self*, *supra*, 233 Cal.App.3d 414, cited by defendant, we *are* able to conclude the court would have sentenced defendant to prison based solely on that violation. In *Self*, a petition for revocation of probation alleged that the defendant had failed to report regularly and pay restitution. (*Id*. at p. 416.) After the testimony at the probation-revocation hearing, the trial court permitted the prosecution to amend the petition to include an additional violation, i.e., a violation of the condition that the defendant not maintain a bank account. (*Id*. at p. 416, fn. 1.) The *Self* court rejected two of the grounds for revocation, stating that that the trial court abused its discretion in not determining the defendant's ability to pay restitution, and it erred in permitting amendment of the petition, since the defendant had no written notice of the bank account allegation. (*Id*. at pp. 418-419.) The court stated that it could not conclude the court would have sentenced defendant to prison based solely on the one ground remaining—the failure to report—and remanded the matter for resentencing. (*Id*. at p. 419.)

In the instant case, the possession of narcotics was directly related to the conviction for which defendant was granted probation. Unlike a failure to report, possession of the quantity of cocaine found in defendant's car was a serious probation violation under the circumstances of his case. The prior court granted defendant probation for two drug-related offenses when the People's only offer to defendant was three years in state prison. Moreover, he had committed those offenses while on probation for another crime. Although a different judge presided over the revocation

11

proceedings, defendant was warned by Judge Schnegg, who granted the probationary term, "When I give suspended time and you don't comply with probation and you mess up, I'm going to give that suspended time."  Accordingly, there is no reasonable possibility that the trial court would have, or should have, reinstated probation even if the other violations were stricken for inadequate notice, and any failure to give defendant proper notice of all four of his violations was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18.)

For the foregoing reasons, we hold that defendant's claim that he was prejudicially deprived of proper notice of the grounds on which he was alleged to have violated probation is without merit.  He suffered no due process violation.

## DISPOSITION

The order appealed from is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


BOREN, P.J.

We concur:


ASHMANN-GERST, J.


CHAVEZ, J.


12